**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

| | |
|---|---|
| **JANET LILLIAN SCHEUVRONT,**<br><br>Plaintiff,<br><br>**v.**<br><br>**NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social Security,**<br><br>Defendant. | **CIVIL ACTION NO.: 3:17-CV-84 (GROH)** |

# REPORT AND RECOMMENDATION

## I. INTRODUCTION

This case arises from the denial of Plaintiff Janet Lillian Scheuvront's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("the ALJ") concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Now, Plaintiff seeks judicial review of the ALJ's decision. Because the ALJ's decision to deny Plaintiff's claim for DIB is supported by substantial evidence, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Judgment be granted.

## II. PROCEDURAL HISTORY

On April 8, 2014, Plaintiff filed a claim for DIB, alleging that her disability began on July 5, 2012. R. 17. Plaintiff's claims were denied initially, R. 102–12, and on reconsideration, R. 114–25. After these denials, Plaintiff filed a written request for a

hearing before an ALJ. R. 138–39. On June 29, 2016, a hearing was held before the ALJ in Morgantown, West Virginia. R. 17, 40–100. Plaintiff, represented by counsel Harold E. Bailey, Esq., and Casey B. Vass, an impartial vocational expert, appeared in person. R. 17. Approximately three months later, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 17–33. On June 20, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner"). R. 1–3.

On July 19, 2017, Plaintiff, through counsel Brian D. Bailey, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (2015). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on September 13, 2017. Answer, ECF No. 8; Admin. R., ECF No. 9. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and their supporting briefs on October 12, 2017, and November 13, 2017, respectively. Pl.'s Mot. Summ. J., ECF No. 12; Def.'s Mot. Summ. J., ECF No. 15. Plaintiff then filed a response to the Commissioner's supporting brief on November 21, 2017. Resp. Def.'s Br. Supp. Mot. Summ. J., ECF No. 17.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the

administrative record, the undersigned now issues the following Report and Recommendation.

## III. THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920 (e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## IV. ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity after July 5, 2012, the date of alleged onset. R. 19. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: osteoarthritis; cervical spine degenerative disc disease; lumbar spine degenerative disc disease; mild osteoarthritis of the bilateral hands; major

depressive disorder; panic disorder, with agoraphobia; generalized anxiety disorder; and personality disorder. R. 20–22. At the third step, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments. R. 22–24. Then, the ALJ determined that Plaintiff has "the [RFC] to perform light work," but with the following limitations:

> Claimant could not climb ladders, ropes, or scaffolds; could frequently balance and stoop; could occasionally perform all other postural movements; was limited to work that did not require greater than occasional exposure to concentrated levels of extreme cold, vibrations, or hazards (such as moving mechanical parts or unprotected heights); and was limited to simple, routine tasks with occupations that were SVP or lower, performed in a low stress setting, defined as requiring no assembly line, no fast-paced production requirements, no more than occasional changes in the work routine, and which requires only occasional simple decision making.

R. 24–31. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 31. Then, at step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 31–32. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 32.

## V. <u>DISCUSSION</u>

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v.</u>

Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

**B. Contentions of the Parties**

In his motion for summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence. See generally Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 12-1. Specifically, Plaintiff avers that the ALJ's erred by concluding that Plaintiff has the RFC to perform light work because her use of a cane is not medically necessary. Id. at 11–15. Based on this alleged error, Plaintiff asks this Court to remand her claim for calculation of benefits or, in the alternative, for further proceedings. ECF No. 11-1 at 15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. See generally Def.'s Br. Supp. Mot. Summ. J, ECF No. 16.

Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that the ALJ properly concluded that Plaintiff has the RFC to perform light work because her use of a cane is not medically necessary. ECF No. 16 at 15–24. Accordingly, the Commissioner requests this Court to grant her summary judgment and affirm the ALJ's decision. Id. at 25. The undersigned addresses each argument, in turn, below.

**C. The ALJ's Assessment of Plaintiff's Residual Function Capacity is Supported by Substantial Evidence**

Here, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because Plaintiff does not have the RFC to perform light work. See ECF No. 12-1 at 11–15. Plaintiff insists that she is not capable of performing light work because her use of a cane is medically necessary. Id.

"[RFC] represents the most that an individual can do despite his [or her] limitations or restrictions." Hughes v. Berryhill, No. 2:17-CV-01983, 2017 WL 4854112, at *11 (S.D. W. Va. Oct. 4, 2017) (emphasis in original) (citing SSR 96-8p, 1996 WL 3744184, at *1(July 2, 1996)). "It is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." Felton–Miller v. Astrue, 459 Fed. App'x 226, 230–31 (4th Cir. 2011); see also 20 C.F.R. §§ 404.1546(c), 416.946(c) (assigning responsibility of RFC assessment at hearing level to the ALJ); SSR 96–8p (identifying RFC finding as administrative assessment and outlining criteria to be used). "The process for assessing RFC is set out in Social Security Ruling 96-8p." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p.

"Under that ruling, the assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-

function basis, including the functions listed in the regulations." Monroe, 826 F.3d at 187 (internal quotations omitted) (citations omitted). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Id. (internal quotations omitted) (citations omitted). Accordingly, this Court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. See id. If the ALJ failed to do so, the Court must then determine whether the ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. See id. at 188 ("[R]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." (quoting Mascio, 780 F.3d at 636)). Next, if the ALJ's failure frustrates meaningful review, the Court must determine if remanding to the ALJ is appropriate under the circumstances. See id. The undersigned addresses the second question below, which is dispositive.[1]

**1. Plaintiff's Use of a Cane is Not Medically Necessary**

Plaintiff's argues that her use of cane is medically necessary for several reasons: First, Plaintiff argues that her treating physician prescribed her a cane. See id. at 11–13. Second, Plaintiff argues that two treating physicians confirm that her use of a cane is medically necessary. See id. Third, Plaintiff insists that the medical necessity of her cane is evidenced by her medical records, which often show abnormal or antalgic gait, muscle weakness, etc. Id. at 11–12, 14–15. Fourth, Plaintiff argues that she need not have a surgical procedure to evidence the medical necessity of her cane. Id. at 12. Fifth,

[1] The undersigned need not decide whether the ALJ properly conducted the requisite function-by-function analysis because the undersigned nevertheless concludes that the ALJ's determination of Plaintiff's RFC does not frustrate meaningful review.

Plaintiff argues that her treating physician concluded that she was not capable of performing light work. Id. at 12. Sixth, Plaintiff argues that the ALJ improperly equated Plaintiff's ability to perform activities of daily living to the ability to perform light work. Id. at 13. And lastly, Plaintiff argues that the ALJ's did not adequately support her reliance on the opinion of the Disability Determination Service ("DDS") evaluators, which was, instead, based on boiler-plate reasoning. Id. at 13–15.

When an issue regarding hand-held assistive devices arises, Social Security Ruling 96-9p provides us guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96–9P, 1996 WL 374185, at *7 (July 2, 1996) (emphasis added).

Here, the ALJ satisfied her basic duty of explanation when she determined that Plaintiff's use of a cane is not medically necessary, and, thus, the ALJ's RFC determination does not frustrate meaningful review and is supported by substantial evidence. First, Plaintiff insists that "Dr. Hawkinberry (Community Care of West Virginia) examined [Plaintiff] and prescribed a cane." ECF No. 12-1 at 11 (citing R. 377). In support, Plaintiff directs the Court's attention to page 377 of the Record. Id. But page 377 is not a prescription for a cane, let alone a prescription written by Dr. Hawkinberry. R. 377. Indeed, page 377 contains treatment notes—not a prescription—written by Iris Trinidad-Carillo, M.D. R. 374–78. Although Dr. Trinidad-Carillo's treatment notes say that she would submit an order for a cane on or around August 29, 2014, R. 377, Dr.

Trinidad-Carillo never ordered said cane, nor do her treatment notes equate to a medical prescription, R. 27; ECF No. 16 at 20–21. This is confirmed by Plaintiff's own testimony which concedes that she never received a cane from Dr. Trinidad-Carillo, and, instead, the canes that Plaintiff uses are either from friends or family. R. 69. Thus, the ALJ correctly concluded that Plaintiff was not prescribed a cane.

Even if Dr. Trinidad-Carillo's treatment notes were a prescription for a cane, the ALJ must still determine whether Plaintiff's use of a cane is medically necessary. See Hughes, 2017 WL 4854112, at *14 ("[E]ven if an assistive device such as a cane or walker is prescribed, it does not necessarily follow that it is 'medically required' as defined in the regulations." (quoting Joines v. Colvin, No. 3:14–cv–00396–MOC, 2015 WL 1249579, at *6 (W.D.N.C. Mar. 18, 2015) (citation omitted))); see also Timmons v. Colvin, No. 3:12-CV-609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013) ("Even if a cane is prescribed, it does not necessarily follow that it is medically required." (citation omitted); Wimbush v. Astrue, No. 4:10-CV-00036, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011) ("Thus, even if a cane is prescribed, it does not necessarily follow that it is medically required." (citing SSR 96–9P); Eason v. Astrue, No. 2:07–CV–00030–FL, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008))).

To do so, the ALJ had to find "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ." SSR 96–9P, 1996 WL 374185, at *7 (emphasis added). Here, the undersigned readily concludes that even if Dr. Trinidad-Carillo's treatment notes are a prescription for a cane, that prescription alone is not enough to satisfy the requirements of SSR 96–9P because it does not describe the

circumstances for which said cane is needed. Id. The only other medical evidence that could satisfy the requirements of SSR 96–9P are the July 2016 opinions of Dr. Desai and Dr. Hawkinberry. But, as discussed in detail below, the ALJ properly discounted those medical opinions because they are inconsistent with the record as a whole.[2]

Tellingly, Dr. Trinidad-Carillo's assessment of Plaintiff's ambulation and musculoskeletal strength—conducted on the same day that Dr. Trinidad-Carillo said she would order Plaintiff a cane—does not indicate that a cane was medically necessary. R. 62–65. Indeed, Dr. Trinidad-Carillo noted that Plaintiff was "ambulating normally." R. 376. Plaintiff had "normal tone and motor strength." R. 377. "[N]o contractures malalignment, or bony abnormalities and normal movement of all extremities . . . ." R. 377. Although Plaintiff had some tenderness in her ankles, legs, and knees, Dr. Trinidad-Carillo nevertheless noted that Plaintiff had "full [range of motion] of both knees and ankles, no crepitus or instability of knee joints[,] . . . no edema[, and] no swelling of ankles and knees . . . ." R. 377 (emphasis omitted).

Based on this same-day assessment, the ALJ made the common-sense observation at the administrative hearing that Dr. Trinidad-Carillo's intention to order a cane may have been based on Plaintiff's request rather than medical necessity. R. 62–65. Further, the ALJ cited this same-day assessment in her written decision to show that Plaintiff was often assessed 5/5 strength, normal muscle tone and bulk, no edma, and

[2] Not to mention, those opinions were produced after the administrative hearing at the request of Plaintiff's counsel. R. 1243–45, 1247–49. In those requests, Plaintiff's counsel prodded medical opinions from each doctor that would satisfy the requirements of SSR 96–9P, but did so by cherry picking favorable evidence that would suggest Plaintiff's use of a cane is medically necessary. R. 1243–45, 1247–49. Plaintiff's counsel did not accurately reflect the record by citing conflicting medical evidence that comprised the Record. R. 1243–45, 1247–49. None of this evidence was not, however, material to—nor was it considered in—the undersigned's determination here. What is more telling is that both Dr. Desai and Dr. Hawkinberry did not find it necessary to prescribe a cane or note its medical necessity throughout the course of treating Plaintiff. See generally ECF No. 9.

normal gait and coordination. R. 26 (citing Exhibit 9F (R. 372–86)). Of course, the ALJ was well within her right to look to Plaintiff's physical assessment from that day, as well as any other relevant evidence of record such as Plaintiff's entire medical history, activities of daily living, etc., to determine whether the cane was medically necessary. Hughes, 2017 WL 4854112, at *11("The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments." (citing 20 C.F.R. §§ 404.1545(a), 416.945(a))). Here, the ALJ did just that.

In addition to discussing other relevant medical evidence that often showed Plaintiff had normal gait and coordination, the ALJ also pointed to a wealth of activities of daily living that support her conclusion that Plaintiff's use of a cane is not medically necessary. R. 27. For example, the ALJ noted that Plaintiff had recently gone "hunting, which involved hiking up hill and walking nearly 1.5 miles. R. 28. Indeed, after that hunting excursion, Plaintiff told her physical therapist the following: "It was hard but I was able to hike up on the hill and go hunting yesterday. Doing better at being up on feet longer as it was nearly 1.5 miles to get up there. Was tired after but not really that painful. Right shoulder neck bother me more." R. 961 (emphasis added).

Despite this evidence, Plaintiff next argues that the medical necessity of her cane is evidenced by the July 2016 opinions of Lavanya Desai, M.D., and Denzil Hawkinberry, M.D. ECF No. 12-1 at 11–13. In Dr. Desai's opinion, Plaintiff needs a cane to stand and walk on all surfaces and terrain, and she has had said need since July 5,

2012, the date of Plaintiff's alleged onset. R. 1244–45. In Dr. Hawkinberry's opinion, Plaintiff needs a cane to stand and walk on all surfaces and terrain. R. 1248. But unlike Dr. Desai, Dr. Hawkinberry could only attest to Plaintiff's need since September 8, 2014, the date he had first evaluated her. R. 1249. Here, the ALJ properly discounted both opinions because they are not supported by the record as a whole. R. 29–30. Specifically, to support her decision to give Dr. Desai's opinion little weight, the ALJ explained—and Plaintiff does not dispute—that "there is no evidence of treatment for any condition until January 2014." R. 29 (emphasis added). Thus, the ALJ rightfully discounted Dr. Desai's opinion that Plaintiff has needed a cane since July 2012, when "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" from July 5, 2012, to January 19, 2014. R. 19; see also 19–20. Moreover, the ALJ explained that "the record is devoid of a prescription for the use of a cane and physical examinations show the claimant to have a normal gait and normal coordination just as often as they show the claimant to have antalgic gait." R. 29.

In support of her decision to give Dr. Hawkinberry's opinion some weight, the ALJ similarly explained that although there was a notation to order Plaintiff a cane,[3] there was no prescription for a cane and "physical examinations show the claimant to have a normal gait and normal coordination just as often as they show the claimant to have antalgic gait." R. 30. Tellingly, throughout the course of Plaintiff's treatment, Dr. Desai and Dr. Hawkinberry did not prescribe a cane, did not order a cane, and did not say that

[3] The ALJ erred by attributing this notation to Dr. Hawkinberry instead of Dr. Trinidad-Carillo. R. 30; see also R. 374–78. But the undersigned readily concludes that this error is harmless, because it only further shows why Dr. Hawkinberry's opinion that Plaintiff's cane is medically necessary is not entirely supported by the medical evidence.

Plaintiff's use of a cane was medically necessary. See generally ECF No. 9. Taken together, the undersigned concludes that the ALJ's decision to give Dr. Desai's July 2016 opinion little weight and Dr. Hawkinberry's July 2016 opinion some weight is supported by substantial evidence.

Third, Plaintiff insists that the medical necessity of her cane is evidenced by her medical records, which often show abnormal or antalgic gait, muscle weakness, etc. ECF No. 12-1 at 11–12, 14–15. Effectively, Plaintiff takes issue with how the ALJ weighed conflicting medical evidence, arguing that the ALJ should have given more weight to the evidence that showed abnormal or antalgic gait, muscle weakness, etc., because that evidence appeared just as evidence of normal gait, coordination, and muscle strength, etc. See ECF No. 12-1 at 11–12, 14–15. But this goes beyond our scope of review: A reviewing court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." Thompson v. Astrue, 442 Fed. App'x 804, 805 (4th Cir. 2011) (quoting Barnhart, 434 F.3d at 653). Although reasonable minds may differ regarding the conflicting medical evidence of record, the undersigned cannot disturb the ALJ's factual finding regarding said evidence unless the ALJ applied an improper standard, misapplied the law, or the ALJ's finding is not supported by substantial evidence. See Coffman, 829 F.2d at 517; Richardson, 402 U.S. at 401. Significantly, however, Plaintiff does not argue that the ALJ applied an improper standard or misapplied the law. [4] See

[4] At the evidentiary hearing and oral argument on the parties' cross motions for summary judgment, Plaintiff argued that the ALJ did misapply the law by substituting her own judgment for that of Dr. Desai's and Dr. Hawkinberry's July 2016 opinions that Plaintiff's use of a cane is medically necessary. But because Plaintiff did not raise this argument in her opening brief, the argument is waived.

generally ECF No. 12-1. Thus, the Court cannot disturb the ALJ's factual finding regarding the conflicting medical evidence, so long as it is supported by substantial evidence. The undersigned readily concludes that it is. Here, the ALJ's six-plus-page assessment of Plaintiff's RFC thoroughly discusses the conflicting medical evidence of record and explains why it supports a finding that Plaintiff is capable of performing light work because her use of a cane is not medically necessary. In short, the ALJ's factual finding is supported by substantial evidence, and the undersigned cannot disturb it.

Fourth, Plaintiff argues that she need not have a surgical procedure to evidence the medical necessity of her cane. ECF No. 12-1 at 12. Although that statement is true, the ALJ never required her to do so. See generally R.17–33. Rather, the ALJ cited Plaintiff's conservative treatment history—including her lack of surgery—as one aspect of the evidence that supported the ALJ's conclusion that Plaintiff's use of a cane is not medically necessary. R. 27. In addition to citing Plaintiff's lack of surgery, the ALJ's six-plus page analysis discussed a wealth of other relevant evidence including Plaintiff's conflicting medical assessments, lack of inpatient and chiropractic care, activities of daily living, etc. R. 24–31. Because the ALJ did not require Plaintiff to have a surgical procedure to establish the medical necessity of her cane, the undersigned finds no error.

Even if Plaintiff did raise it, the undersigned is not persuaded. As discussed above, the ALJ 's decision to discount the July 2016 opinions of Dr. Desai and Dr. Hawkinberry is supported by substantial evidence. See supra Section V.C.1. Because the ALJ considered said evidence and satisfied her basic duty of explanation of explaining when discounting said evidence, the undersigned cannot conclude that the ALJ substituted her judgment for that of Dr. Desai and Dr. Hawkinberry. Instead, the ALJ weighed the conflicting medical evidence and made a factual finding that Plaintiff's cane is not medically necessary. Because the ALJ did not err in making said finding, the undersigned is precluded from disturbing it. See Coffman, 829 F.2d at 517; Richardson, 402 U.S. at 401.

Fifth, Plaintiff argues that Bennett Orvik, M.D., did not opine whether Plaintiff was capable of performing light work, and the ALJ did not explain how Dr. Orvik's findings support a finding that Plaintiff is capable of performing light work. ECF No. 12-1 at 12. Addressing the former, Dr. Orvik need not provide an assessment of Plaintiff's RFC for the ALJ to rely on. Indeed, the assessment of Plaintiff's RFC is a determination reserved to the ALJ. See Felton–Miller, 459 Fed. App'x at 230–31; see also 20 C.F.R. § 404.1546(c), 416.946(c). But reserving said determination to the ALJ does not preclude the ALJ from using Dr. Orvik's findings as support for the ALJ's determination of Plaintiff's RFC. In fact, the ALJ is required to consider all relevant evidence of record when making said determination. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence." (emphasis added)). Thus, had the ALJ not considered Dr. Orvik's findings when determining Plaintiff's RFC, the ALJ would have likely erred. Id. Here, however, the ALJ did no such thing. Instead, the ALJ properly considered all of the relevant evidence of record when determining Plaintiff's RFC.

Addressing the latter, there's no doubt that the ALJ explained how Dr. Orvik's findings support the ALJ's assessment of Plaintiff's RFC. Specifically, the ALJ explained that although "Dr. Orvik assessed [Plaintiff] with 'midly' positive straight leg rises, and decreased range of motion in the lumbar spine," Dr. Orvik "further assessed [Plaintiff] with 5/5 strength in her upper and lower extremities, intact cranial nerves, intact deep tendon reflexes, no muscle atrophy, a normal stance, and a full range of motion of the shoulders, elbows, knees, hips, [] ankles, [and] cervical spine." R. 26 (citing R. 324–30). Further, the ALJ explained that although Dr. Orvik noted that Plaintiff "was not able to

walk on her heels, she was able to tandem walk, walk on her toes, and perform a full squat." R. 26 (citing same). In conclusion, the ALJ explained that these findings was "inconsistent with disabling symptoms and limitations and supportive of the conclusion that [Plaintiff] was able to perform range of light work." R. 27. Because the ALJ (1) was entitled to consider Dr. Orvik's findings and (2) explained why Dr. Orvik's findings support the ALJ's determination of Plaintiff's RFC, the undersigned finds no error.

Sixth, Plaintiff argues that the ALJ improperly equated Plaintiff's ability to perform activities of daily living to the ability to perform light work and, effectively required Plaintiff to be "bedridden" to be disabled within the meaning of the Act. ECF No. 12-1 at 13. That is not so. Again, the ALJ must consider all relevant evidence when determining Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3). Here, the ALJ did just that. In so doing, the ALJ logically considered, and found persuasive, Plaintiff's various activities of daily living, which included driving a car, cooking, doing laundry, shopping, visiting with family on a daily basis, watching television, caring for her personal hygiene and her disabled husband, and hunting and fishing. R. 28. As discussed above, Plaintiff went hunting on at least one occasion, which involved a 1.5 mile hike uphill. R. 28. The following day, Plaintiff told her physical therapist the following: "It was hard but I was able to hike up on the hill and go hunting yesterday. Doing better at being up on feet longer as it was nearly 1.5 miles to get up there. Was tired after but not really that painful. Right shoulder neck bother me more." R. 961 (emphasis added). Of course, going on a 1.5 mile uphill hike to hunt is a far cry from being bedridden or, even, being limited to basic home maintenance. In short, the ALJ properly considered Plaintiff's activities of daily living—along with the other relevant evidence of record—to support the ALJ's determination

that Plaintiff is capable of performing light work. For that reason, the undersigned finds no error.

Lastly, Plaintiff argues that the ALJ's did not adequately support her reliance on the opinion of the DDS evaluators, which was, instead, based on boiler-plate reasoning. ECF No. 12-1 at 13–15. In support, Plaintiff argues that the DDS examiner opinions are contradicted, here, by Plaintiff's prescription for a cane and the July 2016 opinions of Dr. Desai and Dr. Hawkinberry.[5] Id. at 14–15. But as discussed in detail above, Plaintiff was not prescribed a cane, and the ALJ properly discounted both July 2016 opinions. Accordingly, the undersigned need not address those arguments, again, here. Further, the undersigned concludes that the ALJ satisfied her basic duty of explaining how and why the DDS examiners' opinions support her determination that Plaintiff is capable of performing light work because her use of a cane is not medically necessary. Although Plaintiff takes issue with the ALJ's choice of words, Id., those words, alone, are not reversible error. See, e.g., Smith v. Astrue, No. 5:12CV98, 2013 WL 3783958, at *24 (N.D. W. Va. July 18, 2013) (quoting and affirming ALJ Swayze); Monroe v. Comm'r Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *8 (N.D. W. Va. July 22, 2015) (citing and affirming ALJ Vicka). Specifically, the ALJ explained that the DDS examiner opinions "are balanced, objective, and consistent with the evidence of record as a whole . . . ." R. 29. When read in the context of the ALJ's six-plus page analysis, it is clear that the ALJ is saying that those two opinions are consistent with all the evidence she has already discussed. See R. 24–31. Indeed, the ALJ explained that the DDS examiner

[5] Although Plaintiff also suggests that the DDS examiner opinions are generally unreliable, that is without merit. The regulations plainly require the ALJ to consider DDS examiner opinions because DDS examiners, like other federal or state agency medical consultants, "are highly qualified experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).

opinions "are supported by the objective studies showing mild to moderate abnormalities, the physical examinations showing mostly minimal positive findings, [Plaintiff]'s treatment history, and [Plaintiff]'s activities of daily living, all as detailed fully above." R. 29. Furthermore, the ALJ found it persuasive that both DDS examiners separately came to the same conclusion after reviewing the same record: that Plaintiff is capable of performing light work. R. 29. Because the ALJ satisfied her basic duty of explanation, the undersigned finds no error.

In sum, the ALJ's determination that Plaintiff's use of a cane is not medically necessary is supported by substantial evidence. Accordingly, the undersigned finds no error.

**2. Plaintiff is Capable of Performing Light Work**

Plaintiff argues that she is not capable of performing light work because her use of a cane is medically necessary. If Plaintiff's use of a cane is medically necessary, Plaintiff argues that she would be limited to sedentary work and, therefore, disabled under the Medical-Vocational Guidelines (based on her age, education, and work experience). See generally ECF No. 12-1. Because the undersigned concludes that the ALJ's determination that Plaintiff's use of a cane is not medically necessary is supported by substantial evidence, the undersigned readily concludes that the ALJ properly concluded that Plaintiff is capable of performing light work. Accordingly, the undersigned finds no error.

## VI. RECOMMENDATION

For the foregoing reasons, I find that the Commissioner's decision denying Plaintiff's claim for DIB is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **DENIED**,

Defendant's Motion for Summary Judgment [ECF No. 16] be **GRANTED**, the decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 8th day of February, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE